PEAK *v.* HOLLINGSWORTH and Another.

*A.* and *B.*, by an agreement in writing, sold to *C.* five hundred hogs, to be well fatted and to average two hundred pounds net, to be delivered at, &c., whenever *C.* might want them after the 25th of *November*, 1850; but *A.* and *B.* were to have the privilege, if they desired it, to feed two hundred of them until the 1st of *December*, 1850, but were to deliver them on that day or as soon after as *C.* might require. *C.* was to give timely notice, so that *A.* and *B.* could deliver the hogs and have them slaughtered in time for delivery, and he was to pay the price agreed upon for the hogs when they were weighed and delivered. *C.* gave notice to *A.* and *B.*, on the 11th of *December*, 1850, that he was ready to receive and pay for the hogs, but *A.* and *B.* failed to deliver them, &c.

*Held,* that *C.* did not agree to take the hogs whenever, after *December* 1, 1850, *A.* and *B.* thought proper to tender them, but only after he had given notice of his readiness to receive them.

*Held,* also, that on the 1st of *December*, 1850, *C.'s* right to demand all the hogs not then delivered, was complete; but that at any reasonable time thereafter during the proper hog-killing season, he might give notice of his readiness to receive and pay for the hogs; and that it was incumbent upon *A.* and *B.* to be ready to respond to the notice.

*Held,* also, that a notice given on the 11th of *December*, 1850, was reasonable and timely.

*Friday,*   ERROR to the *Marion* Circuit Court.
*May* 26.
           STUART, J.—*Peak* sued the defendants in assumpsit on the following written agreement, viz.: "We have this day sold to *Willis Peak* five hundred hogs, to be well fatted, and delivered at *Indianapolis*, and to average two hundred pounds net, the delivery to be at any time said *Peak* may want them after the 25th of *November*, 1850. But if said *Hornaday* and *Hollingsworth* should wish to feed two hundred of said hogs until the 1st of *December*, 1850, they are to have that privilege, but are to deliver them on the 1st of *December*, 1850, or as soon after as said *Peak* may require.

And the said *Peak* agrees to pay 3 dollars per hundred pounds net, when said hogs are weighed and delivered, in bank-notes on either the state of *Kentucky*, *Indiana*, or *Ohio*, that are good and current. Said *Peak* is to give said *H.* and *H.* timely notice, so as they can deliver said hogs and have them slaughtered in time for delivery. *Peak* has this day paid on the contract 100 dollars, the receipt of which is hereby acknowledged."

May Term, 1854.

PEAK
v.
HOLLINGS-
WORTH.

*Peak* avers that he gave the parties notice on the 11th of *December*, 1850, that he was ready to receive and pay for the hogs; but that the defendants failed, &c.

The construction of this contract is raised on demurrer to the second plea to the first count. Demurrer overruled, and judgment for the defendants. It is not material to notice any other part of the pleadings. It is conceded that the Court overruled the demurrer to the plea because the declaration was held bad.

The second plea alleges that the defendants, on the 25th day of *November*, 1850, and at all times from that day till the 1st of *December*, 1850, were ready and willing to deliver at *Indianapolis*, three hundred fatted hogs of the description, &c., but that the plaintiff refused to receive them, &c.; that on the 2d of *December*, 1850, (the 1st being *Sunday*), they drove to the same place two hundred other fatted hogs of the description, &c., and were ready and willing to deliver the same, but the plaintiff refused, &c.; and that at all times thereafter until the 10th of *December*, 1850, they were ready, &c., to deliver five hundred hogs, of the description, &c., but that the plaintiff refused, &c.; and that the plaintiff did not at any time between the date of the contract and the 11th of *December*, 1850, give notice that he would receive the hogs, &c.

The structure of the plea indicates the course of argument directed against the declaration. It is contended that to entitle *Peak* to recover, he should have averred notice before the 1st of *December;* that notice on the 11th of *December* was not "timely" and sufficient.

What was the position of these parties? *Peak* had no right to demand any of the hogs before the 25th of *Novem-*

*ber*, and then only three hundred between that and the 1st of *December*. These dates limiting *Peak's* right to demand the hogs, were privileges accorded to the defendants for their benefit. But on the 1st of *December*, *Peak's* right to demand all the hogs not then delivered was complete. At any reasonable time thereafter, during the proper hog-killing season, he might give notice of his readiness to receive and pay for the hogs. It was incumbent on the defendants to be ready to respond to such notice.

We are of opinion that the notice on the 11th of *December* was reasonable and timely.

The plea in failing to confess and avoid the contract declared upon, and in setting up a readiness to perform a different contract in avoidance, was bad on general demurrer. *Peak* had not agreed to take the hogs whenever the defendants, after the specified dates, thought proper to tender them; but only after he had given timely notice of his readiness to receive them.

The first count, setting out the contract, with the requisite averments of notice, &c., was sufficient on general demurrer.

The demurrer to the plea should have been sustained.

*Per Curiam.*— The judgment is reversed with costs. Cause remanded, &c.

*H. O'Neal* and *J. L. Ketcham*, for the plaintiff.

*L. Barbour* and *A. G. Porter*, for the defendants.